DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ANIBAL TOVAR,**
Appellant,

v.

**JENNIKA RUSSELL,**
Appellee.

No. 4D17-1055

[February 28, 2018]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Carlos A. Rodriguez, Judge; L.T. Case No. CACE 16017545 (14).

Brett C. Powell of The Powell Law Firm, P.A., Miami, for appellant.

Neil Rose of Bernstein, Chackman, Liss, Hollywood, for appellee.

MAY, J.

This case invokes a fundamental tenet of contract law: the symmetry needed between an offer and an acceptance to establish an enforceable agreement. The plaintiff appeals an order enforcing a settlement agreement. He argues the trial court erred in enforcing the agreement because there was no meeting of the minds. We disagree and affirm.

The plaintiff[1] was injured in an automobile accident with the defendant. State Farm insured the defendant. The policy contained a $25,000 limit for bodily injury liability per person, a $50,000 limit for bodily injury per accident, and a $10,000 limit for property damage liability.

Before filing suit, plaintiff's counsel delivered a settlement offer to State Farm, requesting State Farm to: (1) tender its policy limits of $50,000; (2) reimburse the plaintiff an additional $10,044 for his property loss; (3)

---

[1] The appellant was the person injured in the accident, but his mother also claimed to have suffered severe emotional distress from witnessing her son's near fatal collision. For ease of reference, we will refer to a single plaintiff throughout the opinion.

provide an affidavit from the defendant stating she had no other insurance coverage; and (4) provide a certified copy of the defendant's insurance policy. The settlement offer did not address a release.

After receiving the letter, State Farm accepted the offer and provided the plaintiff with all requested documents. State Farm enclosed a proposed release and requested it to be executed by the plaintiff and his mother. State Farm's letter stated:

> Execution of the proposed release is not a condition of settlement. Furthermore, the proposed release is not intended to constitute a counter-offer to your settlement offer, or to add any new terms or conditions to your proposed settlement agreement. . . . If the proposed release is not acceptable to you, please contact me so that we can attempt to reach an agreement as to release language that is mutually acceptable and consistent with your settlement offer.

The plaintiff rejected State Farm's proposed release in a letter, claiming the release contained unusual terms that placed an undue burden on him. He requested State Farm provide a standard release. Although he did not specify the nature of his concern about the release, he suggests on appeal that the release contained uncommon restrictions on how the settlement funds could be spent.

State Farm responded with a letter enclosing two proposed releases: a revised version of the initial release, and a standard release drafted by the Trial Lawyers Section of the Florida Bar. The letter stated:

> While it is our preference to have a release executed that memorializes the settlement of the bodily injury claims, execution of a release of the bodily injury claim is not a condition of settlement. Accordingly, if the enclosed releases are not acceptable to you, we withdraw our request for a release.

Plaintiff's counsel responded by returning the check and requesting State Farm to issue two new checks: one for $10,044 covering the plaintiff's property damage, and another for $25,000 issued to the plaintiff's mother. The letter instructed State Farm not to include the plaintiff's name on his mother's check, settlement draft, or release.

State Farm replied that it was under the impression that the settlement offer was already accepted, but indicated it was willing to modify the

existing settlement agreement and reissue the checks in the manner the plaintiff desired. State Farm asked the plaintiff to clarify his position in light of the settlement agreement, and explain why he had not requested issuance of a new check in the previous correspondence.

The plaintiff responded by filing a complaint alleging negligence against the defendant and bad faith against State Farm. Shortly thereafter, the plaintiff voluntarily dismissed his claim against State Farm. The defendant filed an answer and affirmative defenses, alleging the plaintiff's action was barred by accord and satisfaction because a settlement had been reached between the parties. The defendant also moved to enforce the settlement, arguing State Farm accepted the plaintiff's offer by complying with its essential terms.

The plaintiff filed a memorandum of law in opposition to the motion, arguing there was no settlement agreement because there was no meeting of the minds between the parties. The trial court found the parties entered into a settlement agreement, and entered a final order granting the motion to enforce and dismissing the action.

From this order, the plaintiff now appeals.

The plaintiff argues there was no settlement agreement because State Farm did not accept the offer, but instead made a counteroffer by requesting a release with new, material terms that did not mirror the offer. State Farm responds that it accepted the offer by substantially complying with the offer's essential terms, creating a settlement agreement. It specifically indicated that the release was neither a condition of the settlement nor a counteroffer.

We review a trial court's findings to ensure they are supported by competent substantial evidence. *Cheverie v. Geisser*, 783 So. 2d 1115, 1119 (Fla. 4th DCA 2001).

Settlement agreements are a favored method to conserve judicial resources and will be enforced whenever possible. *Spiegel v. H. Allen Holmes, Inc.*, 834 So. 2d 295, 297 (Fla. 4th DCA 2002). Settlements are subject to the rules governing contract interpretation. *Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985). "The acceptance of an offer which results in a contract must be absolute and unconditional, identical with the terms of the offer, and in the mode, at the place, and within the time expressly or impliedly stated within the offer." *Grant v. Lyons*, 17 So. 3d 708, 710 (Fla. 4th DCA 2009).

Generally, an insurance company that accepts an offer can request the plaintiff to sign the "usual settlement documents." *Id.* at 711. But, where the release contains objectionable and unusual terms, there is no acceptance of the offer. *Id.*; *see also Peraza v. Robles*, 983 So. 2d 1189, 1190 (Fla. 3d DCA 2008).

Here, the plaintiff made a settlement offer demanding: (1) $60,044 for personal injury and property damage; (2) a certified copy of the insurance policy; and (3) an affidavit from the defendant indicating she had no other insurance coverage. State Farm responded by accepting the offer, and enclosing the requested sum, a certified copy of the defendant's policy, and the defendant's affidavit.

State Farm's letter mirrored the conditions of the offer. The letter enclosed a proposed release, but expressly stated it was not a condition of settlement. Based on the communication between the parties, the trial court found "State Farm clearly stated in correspondence that execution of its proposed release 'is not a condition of settlement' and stated that the proposed release 'is not intended to constitute a counter offer.'" The trial court held the parties entered into binding settlement that must be enforced. We agree with the trial court and affirm its decision.

In doing so, we acknowledge other cases where we and other courts have held the language of releases and other conditions required by insurance companies varied from the original offer preventing the requisite meeting of the minds. *See, e.g., Grant*, 17 So. 3d at 709 (requiring all settlement documents executed and all liens satisfied prior to disbursement of proceeds, and requiring the plaintiff to warrant that all hospital bills were fully paid); *Cheverie*, 783 So. 2d at 1118 (reversing where an insurance company sent a letter with a check for the policy limits, but did not respond to objections concerning indemnification); *Trout v. Apicella*, 78 So. 3d 681, 683 (Fla. 5th DCA 2012) (holding an insurer did not accept where the offer demanded a single bodily injury release without indemnification language, and the insurer responded with a release titled "release of all claims"); *Peraza*, 983 So. 2d at 1190 (requiring the check to be held in escrow until the insurance company received an "unaltered release executed . . . along with a copy of the U/M Carrier Authorization of Settlement and Waiver of Subrogation Rights.").

In each of those cases, the ongoing discussions concerning the language of the release and other conditions occurred before there was an offer, acceptance, and consideration for the agreement. Here, the offer was accepted by State Farm on identical terms and the agreement reached before any discussion concerning a release. In fact, State Farm specifically

indicated that the release was not a condition of the settlement nor a counter-offer. Any discussion concerning the language of the release occurred after the settlement agreement had been made.

In short, the record contains competent substantial evidence to support the trial court's determination that the parties entered into an enforceable settlement agreement. We affirm.

*Affirmed.*

WARNER and DAMOORGIAN, JJ., concur.

*     *     *

**_Not final until disposition of timely filed motion for rehearing._**